SAMUEL, Judge.
Plaintiff’s predecessor corporation entered into a contract with George Engine Company, Inc., one of the two defendants herein, whereby that defendant was to construct a twin-screw pusher-type tow boat according to certain specifications and, upon completion, sell the same to plaintiff. George Engine subsequently contracted with Philip Ditta, the other defendant, to build the hull. In due course the vessel was completed, sold and delivered.
Alleging that a short time after delivery the vessel began vibrating to an extreme extent due to defects in construction, plaintiff filed this suit seeking a purchase price reduction of $1,855.03, the alleged cost of repairing the defects, plus damages in the amount of $l,320.80i for alleged loss of profits during the time the vessel was in dry dock being repaired. Both defendants answered denying liability. In addition, George Engine filed a third-party demand against Ditta alternatively seeking judgment over against the latter in the event of a judgment in favor of the original plaintiff and against George Engine; and Ditta reconvened seeking judgment against the original plaintiff in the amount of $3,108.00 for extras placed on the vessel at the latter’s request.
After trial judgment was rendered: (1) on the main demand, in favor of the two original defendants and against the original plaintiff, rejecting the latter’s demands; *561 (2) on the reconventional demand, in favor of the plaintiff in reconvention, Ditta, and against the original plaintiff in the amount of $2,814.40; and (3) on the third-party demand, in favor of the third-party defendant, Ditta, and against the third-party plaintiff, George Engine, rejecting the latter’s demand.
The original plaintiff has appealed, contending the trial court erred: (1) in failing to find the vibrations were caused and the repairs were necessitated by a defect in the construction of the vessel; and (2) in awarding $2,814.40 to Ditta, the plaintiff in reconvention. The original defendants have neither appealed nor have they answered the appeal taken by the original plaintiff.
We do not agree with appellant’s first contention. The original defendants offered testimony to the effect that the vibrations could have been caused as a result of fault on the part of appellant, such as a damaged propeller, etc. Only questions of fact are involved and we agree with the trial court’s findings as expressed in his written reasons for judgment. In substance and in pertinent part, those reasons are as follows:
The plaintiff has sued the defendants in this case for damages arising from alleged defects in the construction of a twin-screw pusher type tow boat, which the defendants built for the plaintiff. The plaintiff alleges that some three (3) weeks after the boat began operations, and after operating for only 312 operating hours, it developed terrific vibrations which prevented its further use. Plaintiff contends that these vibrations were caused by misalignment of both struts of the boat during construction and that this misalignment quickly caused the shafts and cutlass bearings to wear rapidly, which, in turn, caused the vibration.
When the vibrations became so bad the boat could no longer be used, it was taken to Tibo Shipyards, Inc., in Harvey, Louisiana, where it was hauled upon ways. Shortly thereafter, a conference was held at this site between Mr. Wayne Sanborn, Vice President of the plaintiff company, Philip Ditta, the actual builder of the boat, and a representative of George Engine Company, Inc., which furnished the specifications and the engines. At this time Mr. Ditta and the George Engine Company representative suggested that piano wire tests be conducted to determine if any misalignment was present. They further stated that, if any misalignment was present, they would pay for the tests and requested that, if no misalignment was present, the plaintiff pay for the tests. This offer was declined by Mr. Sanborn and there is considerable evidence to the effect that Mr. Sanborn at this time agreed to accept the boat in the condition that it was. In fact, Mr. Sanborn admits he agreed to accept the boat provided that Mr. Ditta would forget about $2,500.00 worth of extras that Mr. Ditta is claiming. After this offer was declined, Mr. Ditta and the representative of George Engine Company left the scene.
Later, without the presence of either Ditta or a representative of George Engine Company, the plaintiff, through Tibo Shipyards, did conduct certain piano wire tests, which it claims showed that the struts were out of alignment, that this was a defect in construction and that this caused the vibration. The Court certainly feels that the defendants should have had an opportunity to be present during the conducting of any tests so that they could see for themselves whether or not the tests were properly conducted and the fact that they were not present must weigh against the plaintiff. However, if the Court were convinced that the tests conducted by the plaintiff, even outside of the presence of the defendants, were accurate and showed the construction defects as contended by plaintiff, this Court would have no hesitation in giving judgment for the plaintiff on this score; but the Court does not believe this to be the case.
There was a great deal of technical testimony given during the trial and the Court listened intently and made copious notes *562 regarding the same. At the conclusion of the trial, the Court was of the distinct opinion, at that time, that the plaintiff’s tests had failed to prove its point. The Court has now reviewed all of its notes and the record in this case very thoroughly and is still of that opinion.
Mr. Edmond Chaisson, who actually conducted the piano wire tests for plaintiff, did not actually install the piano wire himself. He had other workers do it and he admitted that the manner in which he conducted the test was a very rough check; but he insisted that from this test he could tell that the struts were out of alignment. Plaintiff’s expert, Mr. Frank Basile, who concluded from his observation of these tests that the struts were out of alignment, testified that new shafts and new cutlass bearings had already been installed and the piano wire was already in place when he was called in. He concluded from his observation that the tests showed the starboard strut was out of alignment horizontally by .093 inches. He also “assumed” that the port strut was out of alignment by approximately the same amount. He admitted he made no scientific measurements or tests whatsoever on the port side but concluded that it was also out of alignment because there existed the same type of pressure or binding on the port side as on the starboard side.
It would be difficult to prove a case in any event with this sort of test being used and with the defendants absent after they had offered to have the same type of tests made (though perhaps in a different manner) in their presence. But the thing that really convinced the Court that these tests under these circumstances failed to prove plaintiff’s case was the testimony of Mr. Frederick Blount, the expert marine surveyor offered by the defendants. Mr. Blount testified in great detail and with great clarity and gave many illustrations which convinced the Court that, because of the manner in which the tests were performed by the plaintiff, they could not be relied upon. For one thing, Mr. Blount testified and proved to the Court’s satisfaction, that the only accurate way to measure for misalignment in front of the cutlass bearing is to cut windows in the stern tube. A measurement cannot be made up the rear of the cutlass bearing, as was done by the plaintiff, because the arm will touch the piano wire running through it. In addition, Mr. Blount proved to the Court’s satisfaction that the strut barrel can be out of alignment slightly without affecting the alignment of the shaft or the alignment of the cutlass bearing, so the collar, or strut barrel, can be cocked, or out of alignment, to one side without affecting the shaft or cutlass bearing which run inside the stern tube. Furthermore, Mr. Blount testified that if the misalignment, as alleged by plaintiff, had existed at the time of launching the boat that thereafter, while running the boat, heat would have developed in the cutlass bearing and the stuffing box and the R.P.M.’s would have been very noticeably reduced. In other words, the boat would have lost a great deal of power and this would have shown up on the R.P.M. gauge. The evidence distinctly showed that there had been no development of heat in the stuffing box or the cutlass bearing, no loss of R.P.M.’s, and no loss of power in the boat until the vibrations started. Mr. Blount and a representative of George Engine Company, Inc. also both testified that when they arrived at Tibo Shipyards, Inc., the day the boat was brought in, they were able to turn the shafts by hand, without any difficulty, and both testified this could not have been done had there been present the misalignment claimed by plaintiff.
In any event, the Court is of the opinion that the plaintiff has failed to show by a preponderance of the evidence that there was any misalignment or defects in construction which caused the vibrations of which they complained. Therefore, they must be denied all damages they seek for *563 repair of the boat and for loss of earnings during the period it was laid up after the vibrations began.
We find merit in appellant’s second contention regarding error in the award of $2,814.40 to Ditta, the plaintiff in recon-vention. The parties stipulated Ditta did place extras on the vessel at appellant’s request and the charge for the same amounted to $3,108.00. The trial court found, and we agree, an appellant employee had done work on the vessel during construction which inured to Ditta’s benefit and appellant was due a set off for the value of that work against the amount of the extras. The trial court further found, and again we agree, such work was performed five and one-half days, or forty-four hours, a week for a period of five months and set the value thereof at $1.40 per hour. However, we must correct a mathematical error which appears in the computations.
At $1.40 per hour a forty-four hour week amounts to $61.60 per week. There are 21 y3 weeks in a five month period (S x 41/3). $61.60 multiplied by 21^4 equals $1,334.67, the amount of set off to which appellant is entitled. Subtracting that figure, $1,334.67, from $3,108.00, due Ditta for the extras leaves $1,773.33, the amount of the award to which Ditta is entitled. We will reduce that award accordingly.
For the reasons assigned, the judgment appealed from is amended only so as to reduce the judgment in favor of the plaintiff in reconvention, Philip Ditta, and against the defendant in reconvention, San-born & O’Neil Towing, Inc., from the sum of $2,814.40 to the sum of $1,773.33. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be borne equally by plaintiff-appellant, Sanborn & O’Neil Towing, Inc., and defendant-appellee, Philip Ditta.
Amended and affirmed.